**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ATD-AMERICAN CO., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.    12-00032 |
| KRUEGER INTERNATIONAL, INC. | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                              August 12, 2014

Currently pending before the Court are (1) Plaintiff ATD-American Co.'s Motion for

Renewed Judgment as a Matter of Law: Breach of the Covenant of Good Faith and Fair Dealing

and (2) Plaintiff ATD-American Co.'s Motion for New Trial and Amended Verdict.  For the

following reasons, both Motions are denied in their entirety.

## I.      FACTUAL BACKGROUND

The lengthy factual background of this case involves an Asset Purchase Agreement

("APA") and corresponding Covenant Not to Compete entered into between Plaintiff ATD-

American Co. ("ATD") and Defendant Krueger International, Inc. ("KI") on March 1, 2008.  In

lieu of repeating the history underlying the present dispute, the Court incorporates by reference

the summary of facts set forth in the Court's opinion of February 27, 2014.  ATD-Am. Co. v.

Krueger Int'l, Inc., No. Civ.A.12–0032, 2013 WL 5544320, at *1–14 (E.D. Pa. Oct. 8, 2013).

Both parties filed Motions for Summary Judgment on May 17, 2013.  By way of a

decision issued October 8, 2013, the Court denied both Motions finding that the Covenant Not to

Compete was ambiguous and could not be interpreted as a matter of law, and that a genuine issue of material fact remained as to whether the parties had reached a meeting of the minds with respect to the Covenant Not to Compete.

From March 31, 2014 to April 15, 2014, the Court held a jury trial on this matter.  At the close of both parties' cases, the Court instructed the jury on the relevant issues and gave the following Interrogatories:

1.   Do you find that the parties had a "meeting of the minds" as to the Covenant Not to Compete contained within the Asset Purchase Agreement?

_____ YES                    _____ NO

**If you answered "no," your deliberations are complete.  Please return to the courtroom.**
**If you answered "yes," continue to Question No. 2.**

2.   Do you find **(a)** that the Covenant Not to Compete prohibited Defendant from making any sales of the products at issue to end-users during the five-year prescribed period or **(b)** that the Covenant Not to Compete only prohibited Defendant from making sales of the products at issue to end-users through mail order catalogs and the Internet?

_____           _____

(a) Prohibited *all* sales to end users                    (b) Prohibited *only* sales made through Catalogs or the Internet

**Proceed to Question No. 3**

2

3.     Based on your interpretation of the Covenant Not to Compete in Question No. 2, do you find that Defendant Krueger International, Inc. breached the contract?

_____ YES                    _____ NO

**Your deliberations are complete.  Please return to the courtroom.**

(Questions to Jurors, ECF No. 205.)  The jury marked "no" with respect to the first question and, therefore, returned to the courtroom to announce their verdict.  In accordance with that verdict, the Court entered Judgment in favor of Defendant on Plaintiff's claims of breach of contract.

On May 13, 2014, Plaintiff filed both a Renewed Motion for Judgment as a Matter of Law and a Motion for New Trial.  Defendant responded on May 27, 2014, making the Motions ripe for judicial review.

## II.     RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

### A.     <u>Standard of Review</u>

A renewed motion for judgment as a matter of law may be granted in a party's favor if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a), (b).  The court should grant such a motion "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability."  <u>Lightning Lube, Inc. v. Witco Corp.</u>, 4 F.3d 1153, 1166 (3d Cir. 1993).  In assessing the sufficiency of the evidence, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of facts for the jury's version.  <u>Id.</u>  Rule 50 motions should be granted "sparingly," <u>Johnson v. Campbell</u>, 332 F.3d 199, 204 (3d Cir. 2003), and only where

"the record is critically deficient of the minimum quantum of evidence" in support of the verdict. Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995).

**B.**     **Discussion**

Plaintiff's Renewed Motion for Judgment as a Matter of Law is premised on the argument that "the facts that com[prise] a breach of contract pertaining to the implied covenant of good faith and fair dealing are undisputed, and therefore judgment as a matter of law is proper."  (Pl.'s Mem. Supp. Renewed Mot. for Judg. as a Matter of Law ("Pl.'s Mem. Supp. Renewed Mot.") 8.)  Plaintiff reasons that the only question presented to the jury, and answered by the jury, was whether a "meeting of the minds" occurred with respect to the Covenant Not to Compete within the Asset Purchase Agreement.  "[W]hile the jury found no meeting of the minds on the Covenant Not to Compete, the claim for breach of implied covenant of good faith and fair dealing due to breach of the goodwill provision of the Asset Purchase Agreement is outside the non-compete, and is unaffected by the jury's verdict."  (Id.)  According to Plaintiff, by directly competing with ATD and interfering with the goodwill sold to ATD, KI clearly breached the covenant of good faith and fair dealing, making Plaintiff entitled to Judgment as a Matter of Law.

Plaintiff's argument is deficient on multiple grounds.  First and foremost, Plaintiff has never pled a claim for breach of the covenant of good faith and fair dealing with regards to the goodwill provision of the APA.  New York law[1] implies a covenant of good faith and fair dealing "pursuant to which neither party to a contract shall do anything which has the effect of destroying

---

[1]  Both parties agree that New York law governs the APA and Covenant at issue in this case.

or injuring the right of the other party to receive the fruits of the contract." Thyroff v.

Nationwide Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir. 2006) (citation omitted).  The covenant

"can only impose an obligation consistent with other mutually agreed upon terms in the contract.

It does not add to the contract a substantive provision not included by the parties."  Broder v.

Cablevision Sys. Corp., 418 F.3d 187, 198–99 (2d Cir. 2005) (citation omitted).  "Under New

York law, a claim for breach of the implied covenant will be dismissed as duplicative if the

conduct allegedly violating the implied covenant is also the predicate for breach of the

underlying contract."  Cary Oil Co. v. MG Refining and Mktg., Inc., 90 F. Supp. 2d 401, 419

(S.D.N.Y. 2000).  However, a plaintiff "may bring two breach of contract claims, one based on

breach of the express terms and the other based on breach of the implied duty, as long as they are

supported by factually distinct allegations."  Hosp. Auth. of Rockdale Cnty. v. GS Capital

Partners V Fund, L.P., No. Civ.A.09-8716, 2011 WL 182066, at *4 (S.D.N.Y. Jan. 20, 2011); see

also Deutsche Bank Sec. Inc. v. Rhodes, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008) (holding that

to avoid redundancy, "[c]laims of breach of the implied covenant . . . must be premised on a

different set of facts from those underlying a claim for breach of contract").

        ATD commenced this litigation with two separate complaints on January 4, 2012.

Following adjudication of Plaintiff's Motion for Preliminary Injunction and Defendant's Motion

to Dismiss, Plaintiff filed an Amended Complaint consolidating its causes of action and setting

forth eleven Counts as follows: (1) breach of the covenant not to compete—damages; (2) breach

of the covenant not to compete—injunction; (3) breach of the confidentiality provision of the

Asset Purchase Agreement—damages; (4) breach of the confidentiality provision of the Asset

Purchase Agreement—injunction; (5) breach of the confidentiality provision of the Supply

Agreement—injunction; (6) irreparable harm, inadequate remedy for money damages, inadequate remedy at law—injunction; (7) harm/hardship—injunction; (8) public interest; (9) fraudulent inducement—damages; (10) relief sought—injunctive relief; (11) relief sought—damages.  By way of two Stipulations, Plaintiff agreed to dismiss Counts III, IV, and V for breach of the confidentiality provisions and Count IX for fraudulent inducement.  These various filings left only two breach of contract counts—Counts I and II—both of which rested solely on the Covenant not to Compete provision of the APA.

Notably, Plaintiff never pled any breach of contract action alleging breach of the APA's sale of goodwill, which would in turn encompass a duty of good faith and fair dealing on the part of Defendant to not damage or deprive Plaintiff of the benefit of Adirondack's goodwill.[2]  Nor has Plaintiff pled a separate claim for breach of the covenant of good faith and fair dealing based on the distinct fact that despite Plaintiff's  purchase of the customer "goodwill" of Adirondack's customer base, Defendant sold to Adirondack customers.[3]  Defendant was not required to anticipate claims of breach of contract for every contractual provision in the lengthy APA. Having failed to ever put forth any cause of action that could encompass a breach of good faith

---

[2]  Plaintiff concedes both that "the claim for breach of implied covenant of good faith and fair dealing" is based on an underlying "breach of the goodwill provision of the Asset Purchase Agreement" and that the claim is "outside the non-compete."  (Pl.'s Mem. Supp. Renewed Mot. 8; see also id. at 3 (noting the contractual provisions at issue in the goodwill claim are sections A.4.a and A.4.i).)

[3]  "New York courts have repeatedly affirmed that a party may be in breach of an implied duty of good faith and fair dealing, even if it is not in breach of its express contractual obligations, when it exercises a contractual right as part of a scheme to realize gains that the contract implicitly denied or to deprive the other party of the fruit of its bargain."  Gross v. Empire Healthchoice Assur., Inc., 847 N.Y.S. 2d 896, 2007 WL 2066390, at *3 (N.Y. Sup. Ct. 2007). (citing cases).

and fair dealing by virtue of the sale of Adirondack customers and goodwill, Plaintiff is not now entitled to judgment on such a claim.

Second, Plaintiff's Proposed Verdict/Jury Interrogatories clarified that Plaintiff's claims focused solely on the Covenant Not to Compete and any accompanying covenant of good faith and fair dealing.  This document stated as follows:

**Contract**
1.     Did plaintiff ATD-American Co., and defendant Krueger International, Inc., enter into a binding contract, the Asset Purchase Agreement?

Yes _____        No _____

If your answer is "yes" to question 1, go to question 2
If your answer is "no" to question 1, return to the courtroom

**Covenant Not to Compete**
2.     As part of the Asset Purchase Agreement, did plaintiff ATD-American Co., and defendant Krueger International, Inc., agree to a Covenant Not to Compete?

Yes _____        No _____

If your answer is "yes" to question 2, go to question 3
If your answer is "no" to question 2, return to the courtroom

**Breach of the Covenant Not to Compete**
3.     Do you find that defendant Krueger International, Inc., breached the Covenant Not to Compete of the Asset Purchase Agreement?

Yes _____        No _____

If your answer is "yes" to question 3, go to question 4
If your answer is "no" to question 3, go to question 8

**Damages**
4.     If your answer to question 3 is "yes," do you find that the breach of the Covenant Not to Compete by defendant Krueger International, Inc., has likely caused plaintiff ATD-American Co., to sustain [damages] from January 31, 2008 to the present?

7

Yes _____        No _____

If your answer is "yes" to question 4, go to question 5
If your answer is "no" to question 4, go to question 6

**Damages**

5.    If your answer to question 4 is "yes," state the amount you award plaintiff ATD-American Co., for damages from January 31, 2008 to the present:

_____

Go to question 6.

**Damages**

6.    If your answer to question 3 is "yes," do you find that the breach of the Covenant Not to Compete by defendant Krueger International, Inc., will cause plaintiff ATD-American Co., to sustain future damages?

Yes _____        No _____

If your answer is "yes" to question 6, go to question 7
If your answer is "no" to question 6, return to the courtroom

**Damages**

7.    If your answer to question 6 is "yes," state the amount you award plaintiff ATD-American for future [damages]:

_____

If your answer to question 3 is "yes" and you answered questions 4 through 7, return to the courtroom

If your answer to question 3 is "no" and you did not answer questions 4 through 7, go to question 8

**Implied Covenant of Good Faith and Fair Dealing**

8.    Do you find that the acts of defendant Krueger International, Inc., breached promises that a reasonable person in the position of plaintiff ATD-American Co., would have been justified in understanding were included in the Covenant Not to Compete of the Asset Purchase Agreement?

Yes _____        No _____

If your answer is "yes" to question 8, go back and answer questions 4 though 7

8

If your answer is "no" to question 8, return to the courtroom

(Pl.'s Proposed Verdict Sheet, ECF No. 102.)

Several crucial points are evident from Plaintiff's document.  First, by virtue of questions one and two, Plaintiff recognized that if the jury found no meeting of the minds either as to the APA as a whole or just as to the Covenant Not to Compete, the jury should conclude their deliberations.  At the actual trial, this is precisely what occurred—the jury found no meeting of the minds as to the Covenant Not to Compete and returned to the courtroom, thus requiring a verdict for Defendant.  Second, Plaintiff's questions directed to whether there was a breach of contract focused solely on the Covenant Not to Compete itself, without mention of any other provision of the APA.  Finally, when framing the implied covenant of good faith and fair dealing question, Plaintiff asked whether Defendant's acts constituted breaches of implied promises in *only* the Covenant Not to Compete, not in any other provision of the APA.

"Federal Rule of Civil Procedure 51 provides that generally, no party may assign as error to jury instructions unless he objects thereto, stating the matter objected to and the grounds of his objection," except, however, where necessary to correct a plain error.  Hampden Real Estate, Inc. v. Metro. Mgmt. Grp., No. Civ.A.02-1160, 2006 WL 2460893, at *3 (E.D. Pa. 2006) (citing Fed. R. Civ. P. 51), aff'd, 253 F. App'x 220 (3d Cir. 2007).  Applying this rule, the Third Circuit has clearly held that failure to object at the time the jury received proposed jury instructions or a proposed verdict sheet constitutes a waiver of this objection.  Inter Med. Supplies, Ltd. v. Ebi Med. Sys., 181 F.3d 446, 463 (3d Cir.1999) (affirming denial of post-trial motions, as a party who fails to object to interrogatories prior to presentment to jury waives the right to challenge).  In this case, not only did Plaintiff fail to object to the Court's jury interrogatories, which focused

entirely on the Covenant Not to Compete, its own proposed interrogatories limited the jury's consideration to that issue.  The precise question on which the jury concluded its deliberations was one proposed by Plaintiff itself.  Having failed to include any proposed instruction regarding the implied covenant of good faith and fair dealing as to the goodwill provision of the APA, Plaintiff has waived this argument.

Third, even generously construing Plaintiff's Motion as alleging breach of the covenant of good faith and fair dealing claim as resulting from Defendant's competition with Plaintiff in violation of the Covenant Not to Compete, Plaintiff's request for judgment as a matter of law on this issue is misplaced in light of the jury's verdict.  As this Court has noted previously, under New York law, an enforceable contract requires a "manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." Express Indus. and Terminal Corp. v. N.Y. State Dep't of Transp., 715 N.E.2d 1050, 1053 (N.Y. 1999).  Stated differently, "[i]n order for a breach of contract to exist, there must be a meeting of the minds for the agreement said to have been breached."  Miranco Contracting, Inc. v. Perel, 816 N.Y.S.2d 516, 516–17 (N.Y. App. Div. 2006) (citations omitted).  A "mere agreement to agree, in which a material term is left for future negotiations, is unenforceable."  Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher, 417 N.E.2d 541, 543 (N.Y. 1981).  A contract is unenforceable where there is no meeting of the minds between the parties regarding a material element thereof.  Brands v. Urban, 587 N.Y.S.2d 698, 700 (N.Y. App. Div. 1992); see also Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC, 760 F. Supp. 2d 384, 398 (S.D.N.Y. 2011) ("When the parties understand the relevant language differently and both understandings are reasonable, however, the contract will be unenforceable as no meeting of the

minds has occurred.").

The jury, in this case, found no meeting of the minds as to the Covenant Not to Compete. Specifically, it determined that the parties never agreed on all material terms regarding what restrictions KI had on its ability to sell to end-users.  Absent a valid and enforceable Covenant Not to Compete, there can be no accompanying duty of good faith and fair dealing with respect to that provision.  Accordingly, Plaintiff's claim fails on this ground.

Finally, even notwithstanding all of the foregoing, Plaintiff has not met its burden of showing that a reasonable jury would have a legally sufficient evidentiary basis to find for Plaintiff on this newly-alleged claim of breach of the covenant of good faith and fair dealing. "To establish a breach of the covenant of good faith and fair dealing, Plaintiff must show: "([a]) fraud, ([b]) malice, ([c]) bad faith, ([d]) other intentional wrongdoing, or ([e]) reckless indifference to the rights of others."  Dover Ltd. v. A.B. Watley, Inc., 423 F. Supp. 2d 303, 329 (S.D.N.Y. 2006) (quoting Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C., 223 F. Supp. 2d 435, 351 (S.D.N.Y. 2001)).  Accordingly, Plaintiff bears the burden of proving that Defendant acted with the requisite state of mind.  Plaintiff has not even acknowledged this burden in its Motion or supporting Memorandum, let alone point this Court to evidence establishing this element.  Given this omission, Plaintiff's Motion must be denied.

For all of the above reasons, Plaintiff has not established any entitlement to judgment as a matter of law.  Plaintiff never pled any cause of action alleging either a breach of the goodwill provision of the APA or breach of the implied covenant of good faith and fair dealing with regard to that provision.  Moreover, Plaintiff's proposed Jury Interrogatories focused solely on the Covenant Not to Compete and suggested that if there were no meeting of the minds, the jury

should conclude its deliberations.  Further, to the extent the breach of the covenant of good faith

and fair dealing occurred in connection with the Covenant Not to Compete, the jury expressly

found that there was no meeting of the minds regarding that Covenant, meaning that no implied

covenant could attach.  Finally, even assuming Plaintiff could pursue a claim for breach of the

implied covenant of good faith and fair dealing, it has not pointed the Court to any evidence

clearly establishing that Defendant acted with the requisite state of mind.  As such, Plaintiff's

Renewed Motion for Judgment as a Matter of Law is denied.

## III.    MOTION FOR NEW TRIAL AND AMENDED VERDICT

### A.    Rule 59(e) Motion for Amended Verdict

#### 1.    Standard of Review

A motion for reconsideration or motion to alter or amend judgment is properly raised

under Federal Rule of Civil Procedure 59(e).  Keifer v. Reinhart Foodservs., LLC, Nos.

Civ.A.13-3159, 13-3160, 2014 WL 1465707, at *2 (3d Cir. Apr. 16, 2014).  "The standard for

obtaining relief under Rule 59(e) is difficult to meet."  Invista N. Am. S.A.R.L. v. M&G USA

Corp., ___ F. Supp. 2d ___, 2014 WL 1292223, at *3 (D. Del. Mar. 31, 2014).  The purpose of a

motion for reconsideration is to "correct manifest errors of law or fact or to present newly

discovered evidence."  Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669,

677 (3d Cir. 1999) (quotations omitted).  "A court should exercise its discretion to alter or amend

its judgment only if the movant demonstrates one of the following: (1) a change in the

controlling law; (2) a need to correct a clear error of law or fact or to prevent manifest injustice;

or (3) availability of new evidence not available when the judgment was granted."  Keifer, 2014

WL 1465707, at *2.  A motion for reconsideration is not an "opportunity for a party to relitigate

already decided issues and should not be used 'to put forward additional arguments, which [the movant] could have made but neglected to make before judgment.'" Garzella v. Borough of Dunmore, No. Civ.A.05-1626, 2007 WL 1450416, at *2 (M.D. Pa. May 15, 2007) (quoting Dodge v. Susquehanna Univ., 796 F. Supp. 829, 830 (M.D. Pa. 1992)).  "Stated another way, a motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already made, rightly or wrongly."  Williams v. City of Pittsburgh, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998).

### 2.    Whether the Jury Finding of "No Meeting of the Minds" is Contrary to the Court's Opinion and Against the Weight of the Evidence

Plaintiff first alleges that the jury's finding of "no meeting of the minds" is contrary to the Court's opinion on summary judgment review and against the weight of the evidence.  In rationalizing this argument, Plaintiff cites to the discussion of "meeting of the minds" in the Memorandum Opinion, wherein the Court stated that "it is only where no sensible ground exists for choosing between conflicting understandings of the contractual language, and where the parties agree to terms that reasonably appear on their face to each of them to be unequivocal but in fact are not . . . that a voiding is necessary."  (Pl.'s Mem. Supp. Mot. to Amend 5 (quoting ATD-Am., 2013 WL 5544320, at *27).  Plaintiff then goes on to cite the following portion of the Court's opinion:

> The mere fact that the parties' exhibits urge different interpretations of the Covenant does not clearly establish an absence of a meeting of the minds. . . . It is entirely plausible that, at the time of the signing of the APA, the parties fully understood and acknowledged the meaning of the term "Restricted Business" and thus had a meeting of the minds regarding the intent and purpose behind the Covenant, but that in practice, one of the party's expectations were not met by the mutually drafted agreement.  The disappointed party then opted to exploit the ambiguity in the contract to offer an alternative, albeit not originally agreed-upon interpretation, in order to

13

make the Contract work more favorably to its interests.  ***By the same token, it is equally plausible that the parties never fully understood Adirondack's "Business as conducted," were not fully cognizant of each other's business practices, and never clearly agreed on the scope of the Covenant Not to Compete.***

(Pl.'s Mem. Supp. Mot. to Amend 3 (quoting <u>ATD-Am.</u>, 2013 WL 5544320, at *27) (emphasis added by Plaintiff).)  Relying on this language, Plaintiff asserts that the fact finder could only find that there was no "meeting of the minds" if the parties did not know of Adirondack's actual business practices.  Yet, according to Plaintiff, it presented "uncontested evidence at trial" that Adirondack's "Business as conducted" included all manner of sales to end-users and that KI knew of these practices.  (<u>Id.</u>)  Given this testimony, Plaintiff now asserts that the jury "could have, and should have, found a 'sensible ground . . . for choosing between conflicting understandings of the contractual language,'" *i.e.* between ATD's interpretation and KI's interpretation.  (<u>Id.</u> at 6.)

Plaintiff's argument is again premised on multiple faulty grounds.  First, statements in the summary judgment opinion have no impact on whether the jury's verdict, after a full trial, is supported by the weight of the evidence.  The Court's opinion did not limit the jury's role or confine the issue of meeting of the minds to whether the parties knew of Adirondack's actual business practices.  Rather, the Court simply identified this scenario as an example of why a genuine issue of fact remained on the question of meeting of the minds.

Second, with respect to Plaintiff's argument that it presented "uncontested evidence" that the "Restricted Business"—the ambiguous term within the Covenant Not to Compete—included all manner of sales to end-users, Plaintiff is simply incorrect.  While Plaintiff offered multiple pieces of evidence to support its interpretation, KI responded with substantial evidence of its own

to support its interpretation of "Restricted Business" as being Adirondack's direct marketing and sales through catalogs and the Internet only.  The jury was free to assess the credibility of all the witnesses.  "If the jury disbelieved Plaintiff and instead believed the Defendant['s] witnesses, then the verdict was within the jury's discretion."  Jacobs v. City of Phila., No. Civ.A.03-950, 2005 WL 1899499, at *9 (E.D. Pa. Aug 8, 2005) (citing Lind v. Schenley Indus., Inc., 278 F.2d 79, 89 (3d Cir. 1960) (noting that if there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion)), aff'd, 212 F. App'x 68 (3d Cir. 2006).  Ultimately, Plaintiff bore the burden of proving this issue by a preponderance of the evidence and the jury properly found that Plaintiff had not met that burden.

In sum, the Third Circuit has held that a district court has discretion in deciding whether to grant a new trial.  See Lind, 278 F.2d at 89.  Where it is a question of whether the verdict was against the weight of the evidence, however, this discretion is narrow.  Klein v. Hollings, 992 F.2d 1285, 1289–90 (3d Cir. 1993) (discussing the continuum of discretion given to the district court and reversing district court's grant of a new trial to plaintiffs).  "Therefore, a new trial should be granted 'only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience.'"  Jacobs, 2005 WL 1899499, at *8 (quoting Williamson v. Consol. Rail Co., 926 F.2d 1344, 1353 (3d Cir. 1991).  Plaintiff has not met this standard.

### 3.    Whether the Jury Finding of "No Meeting of the Minds" Unfairly Results in Recission, Which is Not an Available Remedy

Plaintiff next asserts that by finding "no meeting of the minds," the Court effectively rescinded the Covenant Not to Compete.  Under New York law, according to Plaintiff, recission is

15

only a possible remedy if the *status quo ante* can be restored. (Pl.'s Mem. Supp. Mot. to Amend 6 (citing <u>Gessin Elec. Contractors, Inc. v. 95 Wall Assoc., LLC</u>, 903 N.Y.S.2d 26, 30 (N.Y. App. Div. 2010)).) "Where a business has been purchased and merged into an existing business, such as in the case at hand, recission is not an available remedy because the *status quo ante* cannot be restored." (<u>Id.</u> (citing <u>Rudman v. Cowles Commc'ns, Inc.</u>, 30 N.Y.2d 1, 13 (N.Y. 1972).) Plaintiff goes on to assert that ATD has now been left in the precarious position of being left without a Covenant Not to Compete to protect the business and customers it bought, but with KI seeking penalties for the shortfall in sales under the Supply Agreement. Accordingly, it concludes that the result of recission is a clear error of law that shocks the conscience.

This argument is legally misplaced. First, the only questions at issue in the present case were whether there was a meeting of minds as to the Covenant Not to Compete and, if so, what was the correct interpretation of that provision and whether Defendant breached it. Plaintiff, as the party claiming breach, had the burden of establishing by a preponderance of the evidence that the parties had reached mutual assent as to the essential terms of that provision. <u>See</u> <u>N.F.L. Ins. Ltd. by Lines v. B & B Holdings, Inc.</u>, 874 F. Supp. 606, 611 (S.D.N.Y. 1995) (holding that a party alleging the existence of a contract bears the burden of proving "all essential terms of the alleged contract, with sufficient definiteness that the Court can interpret its terms" and "that there was a meeting of the minds, demonstrating the parties' mutual assent and mutual intent to be bound"). Plaintiff itself recognized as much in its own Proposed Verdict/Jury Interrogatories, wherein it specifically proposed putting the following questions to the jury:

**Contract**
1.    Did plaintiff ATD-American Co., and defendant Krueger International, Inc.,
enter into a binding contract, the Asset Purchase Agreement?

Yes _____        No _____

If your answer is "yes" to question 1, go to question 2
If your answer is "no" to question 1, return to the courtroom

**Covenant Not to Compete**
2.    As part of the Asset Purchase Agreement, did plaintiff ATD-American Co.,
and defendant Krueger International, Inc., agree to a Covenant Not to Compete?

Yes _____        No _____

If your answer is "yes" to question 2, go to question 3
If your answer is "no" to question 2, return to the courtroom

(Pl.'s Proposed Verdict Sheet, ECF No. 102.)  By virtue of those instructions, Plaintiff effectively

conceded that, notwithstanding the consequences, a finding that the parties had not agreed to a

Covenant Not to Compete was grounds for terminating the case in favor of Defendant.

Moreover, and quite contrary to Plaintiff's arguments, nothing in the jury's verdict or the

Court's judgment discussed recission.   All parties were well aware of the severability clause in

the APA that allowed an invalid provision to be severed from the remainder of the contract.

Nonetheless, at no point did ATD raise any concerns about the inequity of recission, request

instructions on recission, or propose any jury interrogatories regarding recission.  Rather, as

agreed in the charging conference, the Court instructed the jury, in accordance with New York

law, that to form a contract, there must be a meeting of the minds.   The jury thereafter made one

conclusion—that there was no meeting of the minds as to the Covenant Not to Compete.  That

ruling was sufficient to issue a judgment in favor of Defendant on its breach of contract claim.

17

To the extent recission creates an inequitable result, that argument is not a sufficient basis on which to amend judgment. Plaintiff cites to the Memorandum on summary judgment, where the Court—in the context of distinguishing a case relied on by Defendant—commented that "granting Defendant's suggested remedy of severance of the Covenant Not to Compete will benefit Defendant, as it will free Defendant of any restrictions on its ability to sell to end-users for the relatively small sum of $10,000, but will leave Plaintiff in the precarious position of having purchased the assets of Adirondack's catalog business, being obligated to make a minimum number of purchases from KI, but having to compete with KI in all means of sales of those products." ATD-Am., 2013 WL 5544320, at *29. Aside from the irrelevance of the statement with respect to the jury verdict, it deals with the concept of severing the Covenant Not to Compete from the remainder of the APA—a concept not at issue in the trial.[4]

In short, having failed to show a change in the controlling law, a clear error of law or fact, or the availability of new evidence not available when the judgment was granted, Plaintiff is not entitled to an amended judgment.[5] Accordingly, its Motion on this point is denied.

### 4.   Whether the Motion for Reconsideration of ATD's Motion for Summary Judgment Should Have Been Granted

Plaintiff next contends that its Motion for Reconsideration of the Court's denial of Plaintiff's Motion for Summary Judgment should have been granted. The Court disagrees.

Primarily, the Motion is untimely. Under Rule 59(e), "[a] motion to alter or amend a

---

[4] Moreover, to the extent ATD now presents to the Court post-trial correspondence related to the AAA arbitration between the parties, this tactic is improper and not related to any issue before this Court.

[5] Notably, Plaintiff does not even indicate what type of amendment would be proper for this error.

judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P.

59(e).  Notably, however, the Court's denial of Plaintiff's Motion for Reconsideration regarding

the denial of Plaintiff's Motion for Summary Judgment was not a final "judgment" for purposes

of that rule, but rather an interlocutory order under Federal Rule of Civil Procedure 54(b).  See

Davis v. State Farm, No. Civ.A.11-3401, 2013 WL 775524, at *3 (E.D. Pa. Mar. 1, 2013) (noting

that a denial of a motion for summary judgment is not a final judgment).  "The provisions of Rule

59 are designed to address orders rendering a final judgment, not interlocutory orders denying

summary judgment." Mitchell v. Twp. of Willingboro Mun. Govt., 913 F. Supp.2d 62, 78 (D.N.J.

2012); see also Warner v. Twp. of S. Harrison, 885 F. Supp. 2d 725, 747–48 (D.N.J. 2012)

("Because no final judgment has been entered in this action pursuant to Rule 54(b), the provisions

of Rule 59, and its 28-day time limit, are inapplicable here.").  Therefore, the proper procedural

mechanism is Local Rule of Civil Procedure 7.1(g), which provides that other than motions

governed by Federal Rule of Civil Procedure 59(e), "[m]otions for reconsideration or reargument

shall be served and filed within fourteen (14) days after the entry of the order concerned." E.D.

Pa. R. 7.1.(a).  In this case, the Court denied Plaintiff's Motion for Reconsideration on February

10, 2014.  The instant Motion, however, was not filed until May 13, 2014—over ninety days after

the relevant order.  Accordingly, this Motion is untimely.

Even if the Court were to consider Plaintiff's Motion, however, the arguments raised

therein are meritless.  Plaintiff argues that, in the Motion for Reconsideration, it presented newly

available evidence proving that a representation made by KI in cross-motions for summary

judgment—that ATD did not purchase the Catalog Division—was false.  According to Plaintiff,

this new evidence corrected mistakes in the Court's original opinion based on representations of

KI and, thus, the Court should have granted ATD's motion for reconsideration.  Plaintiff,

however, disregards two key points.  First, the issue of whether ATD purchased the "Catalog

Division," as it claims, or the assets of the catalog division, as KI claims, was irrelevant to the

Court's finding that the APA's definition of the term "Restricted Business" in the Covenant Not

to Compete was ambiguous.  Therefore, any alleged "error" by the Court was harmless.

Moreover, and perhaps more importantly, Plaintiff made this precise argument in its Motion for

Reconsideration when presenting the new evidence.  The Court considered it and determined that

the new evidence, while helpful to Plaintiff's position, did not demonstrate the absence of a

genuine issue of material fact on the relevant issues.  In other words, credibility questions

remained, which were beyond the Court's purview under Federal Rule of Civil Procedure 56.  The

present Motion is nothing more than a request for the Court to rethink through what it already

thought through—a request that is clearly improper on a motion for reconsideration.  See G-69 v.

Degnan, 748 F. Supp. 274, 275 (D.N.J.1990) ("A party seeking reconsideration must show more

than a disagreement with the Court's decision, and recapitulation of the cases and arguments

considered by the court before rendering its original decision fails to carry the moving party's

burden.")  Therefore, the Court rejects this argument.

### 5.  <u>Whether the Issue of Meeting of the Minds Should Not Have Gone to the Jury</u>

Plaintiff's next assertion claims that the APA was clear and unambiguous, meaning that

the Court should not have put the issue of "meeting of the minds" before the jury.  Again, this

argument is nothing more than a request that the Court reconsider its legal ruling on summary

judgment that, as a matter of law, the contract was too ambiguous for the Court to either

determine its meaning or find that there was a meeting of the minds. That ruling was issued on October 8, 2013. The present Motion, filed seven months later, is clearly untimely under Local Rule of Civil Procedure 7.1(a). Moreover, Plaintiff has presented no change of law, new evidence, or clear error at trial that warrants such reconsideration. As the Court's Memorandum set forth in detail the reasons behind its ruling, the Court declines to rehash such reasons.

> **6.     Whether the Issue of "Meeting of the Minds" Should Have Been Resolved on Summary Judgment Review**

Plaintiff also contends that the issue of "meeting of the minds" should have been resolved on summary judgment review. In support of this argument, Plaintiff cites one New York case indicating that meeting of the minds should be viewed as a last resort. It goes on to reason that "[r]ather than allowing the contract to be voided for no meeting of the minds, the Court should have seen if the contract could be given meaning by looking to the conduct of the 'Business.'" (Pl.'s Mem. Supp. Mot. to Amend 12.)

Plaintiff appears to misunderstand the scope of the summary judgment ruling. Both parties moved for summary judgment as to the meaning of the Covenant Not to Compete. The Court found the Covenant ambiguous as a matter of law, which required denial of both motions. In addition, Defendant *alone* moved for summary judgment on the basis that there was no meeting of the minds and that the Covenant had to be voided on those grounds. The Court *denied* that motion, holding that a genuine issue of material fact existed on that question. Absent a contrary motion by Plaintiff seeking summary judgment as to meeting of the minds, the Court had no legal authority to affirmatively make such a ruling and remove the question from the jury's consideration. As such, Plaintiff's current Motion on this issue is denied.

**7.    Whether the Motion for Summary Judgment of ATD Should Have Been Granted**

Plaintiff's next contention—that the Court should have granted Plaintiff's Motion for Summary Judgment—is yet another repetition of its previous arguments in slightly different language.  Plaintiff contends that "[e]ven if finding the Covenant Not to Compete is ambiguous, the Court still could have, and should have, resolved the case upon summary judgment."  (Pl.'s Mem. Supp. Mot. to Amend 12.)  It reasons that it presented "[u]ncontested extrinsic evidence" from KI's corporate designee that established that the "Business" as conducted sold furniture to end-users through all manner of sales, thereby resolving any ambiguity.  (Id.)

As with the previous iterations of this argument, the Court again disagrees.  First, as set forth in great detail above, a motion for reconsideration of the summary judgment ruling should have been properly brought under Federal Rule of Civil Procedure 54, not Rule 59.  According to Local Rule 7.1, such a reconsideration motion should have been filed within fourteen days of the order at issue, which, in this matter, was on October 8, 2013.  Although Plaintiff sought reconsideration of the Court's order in December 2013, based on new evidence uncovered during discovery, the Court denied that motion on February 10, 2014.  As seven months have passed since the October 8, 2013 Order denying summary judgment and three months have passed since the February 10, 2014 Order denying reconsideration, this argument is untimely.

Further, and as repeatedly emphasized above, the evidence as to the "Business" as conducted at the time of closing was not undisputed.  During summary judgment proceedings, the parties had the opportunity to present a full record supporting their varying interpretations of the contract and, upon consideration of all of the evidence, the Court found that neither party had

22

sustained its heavy burden of proving that there was no genuine issue of material fact as to the meaning of the contract. Plaintiff's blanket assertion in its present Motion that no reasonable fact-finder could have found contrary to its interpretation does not alter that decision. Indeed, the Court's uncertainty as to the meaning of the Covenant Not to Compete was confirmed when a jury—who diligently sat through two weeks of testimony, evidentiary presentations, and attorney argument—concluded that the parties had no meeting of the minds as to that provision. Simply because that ruling was not favorable to Plaintiff does not now entitle it to an amended verdict.

**8.** **Whether the Verdict is Against the Weight of the Evidence as KI Presented No Objectively Manifested Evidence of Its Intent**

Plaintiff next seeks to amend judgment on the grounds that the verdict is against the weight of the evidence. Citing to New York law that there must be an objective meeting of the minds to establish an enforceable contract, Plaintiff argues that "KI presented no evidence of objective manifestations of its intent, namely to continue to sell in many of the same means as the 'Business,' and even to the customers of the 'Business.'" (Pl.'s Mem. Supp. Mot. to Amend 13–14.) Subsequently, despite acknowledging that KI did present evidence that it made substantial sales in the manner purportedly prohibited by the Covenant Not to Compete and that it would not have made business sense for KI to forego these sales in connection with the APA, Plaintiff argues that such evidence could not support the jury's finding because it was never manifested to ATD during the formation of the contract.

As noted above, new "trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks the conscience." Marra v.

Phila. Hous. Auth., 497 F.3d 286, 309 n.18 (3d Cir. 2007) (quoting Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991)).  Plaintiff's cursory argument does not satisfy this standard for several reasons.[6]

First, as explained previously, Plaintiff bore the burden of establishing that there was a meeting of the minds by objective evidence that both parties intended to be bound by the Covenant Not to Compete as interpreted by Plaintiff.  Contrary to Plaintiff's argument, Defendant did not have the burden of proving that it objectively understood the Covenant to mean something other than Plaintiff understood it to mean.

Second, the record is replete with objective evidence that Defendant believed that the Covenant only restricted KI's sales to end-users through catalogs and the Internet and that Plaintiff was made aware of that intent.  As Plaintiff concedes, KI presented evidence that it would not have made sense for KI to forego sales to end-users in exchange for the $10,000 consideration paid for the Covenant Not to Compete.  Moreover, KI's counsel in charge of drafting the agreement testified that KI simply agreed not to be in the catalog business and that, during negotiations over the Covenant, KI indicated its continued intent to sell to end-users generally, including Adirondack customers.  Finally, ATD's principal, Janet Wischnia, testified that she was invited by KI to come to Wisconsin and watch KI's sales operations.  Faced with this evidence, together with Plaintiff's contradictory evidence that KI never disclosed that it sold to

---

[6] Defendant also argues that the present motion is clearly an attack on the sufficiency of evidence, disguised as a Rule 59(e) Motion, which required Plaintiff to file a Motion for Judgment as a Matter of Law under Rule 50 on this issue at the end of the presentation of evidence at trial.  Having failed to do so, Defendant argues that Plaintiff has waived the right to seek post-trial relief.

In denying Plaintiff's contention on other grounds, the Court forgoes addressing this argument.

end-users and the dollar value of its end user-sales, the jury determined that both parties'

interpretations were reasonable and that they did not have a meeting of the minds as to the correct

interpretation of the Covenant Not to Compete.  Plaintiff has not offered any basis for this Court

to now find that the jury's verdict resulted in a miscarriage of justice or shocks the conscience.

### 9.    Whether ATD Should Have Been Allowed to Amend Its Complaint to Include a *Mohawk* Claim

Plaintiff's last argument in support of its Rule 59(e) Motion contends that it should have

been allowed to amend its complaint to include a claim under Mohawk Maintenance Co., Inc. v.

Kessler, 419 N.E.2d 324 (N.Y. 1981) (a "Mohawk claim").  Its argument, in its entirety, states as

follows:

> ATD filed a motion for summary judgment that included a claim for breach of the Mohawk doctrine. . . . The Court rejected ATD's Mohawk claim on the basis that it was not pled. . . . The Court further stated that "plaintiff does not seek leave to amend and this Court would not be inclined to grant leave at this point."
>
> However, as ATD stated in its Sur-Reply Brief on summary judgment, a good-faith reading of New York law shows that Mohawk claims need not be pled, and if the Court found otherwise, that ATD should be granted leave to amend the complaint. . . .
>
> The weight of the law supports granting leave.  Federal Rule of Civil Procedure 15(a)(2) provides that the Court should "freely give leave" for a party to file an amended pleading "when justice so requires."  Fed R. Civ. P. 15(a)(2).  There is a "general presumption in favor of allowing a party to amend pleadings."  Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir. 1984), citing Forman [sic] v. Davis, 371 U.S. 178, 182 (1962).

(Pl.'s Mem. Supp. Mot. to Amend. 15.)

This argument is meritless on many levels.  Primarily, as repeatedly explained above, this

issue should properly have been made part of a motion for reconsideration of the summary

judgment ruling, but was not.  Having failed to raise this claim within the requisite time period,

Plaintiff has waived this argument.  Moreover, as Defendant correctly points out, Plaintiff never

25

sought leave to amend to add this claim.  Rather, despite the fact that this litigation was initiated in January 2012, Plaintiff never mentioned the Mohawk doctrine until May 2013, when it filed its Motion for Summary Judgment.  Even then, however, it simply raised the cause of action as another basis for relief, but did not request leave to amend the Complaint.  The first hint of a possible request for leave to amend appears in a footnote to Plaintiff's Sur-reply Brief in support of its opposition to Defendant's Motion for Summary Judgment.  At no point after the Court issued its ruling on summary judgment did Plaintiff attempt to file a motion for leave to amend or even raise the issue in the Motion for Reconsideration.  Accordingly, the Court's non-grant of leave to amend came as a result of Plaintiff's failure to ever request such relief.

Nonetheless, even were Plaintiff to formally request leave to amend at this juncture, the Court would not be inclined to grant it based on the record.  While Plaintiff is correct that leave to amend should be freely given when justice so requires, Fed. R. Civ. P. 15(a)(2), "[t]he policy favoring liberal amendment of pleadings is not . . . unbounded."  Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990).  A district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."  Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

As this Court previously noted, Plaintiff had already filed three separate Complaints and engaged in one and a half years of discovery, none of which even hinted at the invocation of this doctrine.  Without previous notice of the Mohawk doctrine claim, Defendant was deprived of an opportunity to test this theory's viability by way of a Rule 12 Motion or to take any discovery on

26

the unique issues raised by the <u>Mohawk</u> doctrine.[7]  Even after Plaintiff was put on clear notice that it had not pled this claim, it still never sought leave to amend.  Suddenly, after summary judgment review, pre-trial motions, and a two-week jury trial, Plaintiff now seeks leave to amend to add a <u>Mohawk</u> claim by way of its post-trial motions.  Such a tactic constitutes excessively undue delay and would result in extreme prejudice to Defendant.  Therefore, the Court rejects Plaintiff's argument on this issue.

### 10.     Conclusion as to Rule 59(e) Motions

In short, Plaintiff's Rule 59(e) Motion present no proper or viable claim on which the Court could appropriately issue an amended verdict.  As such, Plaintiff's Motion is denied in its entirety.

### B.     Rule 59(a) Motion for New Trial[8]

### 1.     Standard of Review

Federal Rule of Civil Procedure 59 provides, in relevant part:

(a) In General.
    (1) Grounds for New Trial. The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:
        (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court;
. . .
(b) Time to File a Motion for a New Trial. A motion for a new trial must be filed no

---

[7]  Moreover, as the Court noted on summary judgment review, it is not even clear that the <u>Mohawk</u> doctrine is a viable theory.  While New York law clearly applies to the contract claims, it does not necessarily apply to tort claims like the <u>Mohawk</u> doctrine.  As this theory is unique to New York law, application of another state's law would necessarily moot such a claim.

[8]  Plaintiff re-presents the issues under headings 2,3,5,8,9 above as a basis for its Rule 59(a) Motion.  In doing so, it offers no additional arguments, but merely incorporates by reference the arguments from its Rule 59(e) Motion.  For the same reasons set forth above, Plaintiff's arguments on these issues are rejected.

later than 28 days after the entry of judgment.

. . .

Fed. R. Civ. P. 59(a), (b).  Rule 59(a) does not set forth specific grounds on which a court may grant a new trial.  "The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court."  Blancha v. Raymark Indus., 972 F.2d 507, 512 (3d Cir. 1992) (citing Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980)); see also Coney v. NPR, Inc., 312 F. App'x 469, 471 n.5 (3d Cir. 2009).  The court may order a new trial if it is required to prevent injustice or to correct a verdict that was contrary to the weight of the evidence.  Am. Bearing Co. v. Litton Indus., Inc., 729 F.2d 943, 948 (3d Cir. 1984).  Requests for a new trial are disfavored by the law.  Price v. Trans Union, L.L.C., 839 F. Supp. 2d 785, 792 (E.D. Pa. 2012).  A trial court will not grant a new trial on the basis of trial error unless the error resulted in prejudice. Id.  "In other words, no injustice will be found in nonprejudicial trial errors."  Dean v. Specialized Sec. Response, 876 F. Supp. 2d 549, 552–53 (W.D. Pa. 2012).

"The scope of a district court's discretion in evaluating a motion for a new trial depends on whether the motion is based upon a prejudicial error of law or a verdict alleged to be against the weight of the evidence."  Id. at 553 (citing Klein v. Hollings, 992 F.2d 1285, 1290 (3d Cir. 1993)). When the motion involves a matter within the sound discretion of the trial court—such as the court's evidentiary rulings, points of charge to the jury, or a prejudicial statement made by counsel—the district court has wide latitude in ruling on the motion.  Id.

## 2. Bifurcation

Plaintiff's first main issue in support of its Motion for New Trial argues that the Court's decision to bifurcate liability from damages during trial was unfairly prejudicial to Plaintiff.

Plaintiff alleges that its loss of sales caused by Defendant's actions was evidence of both damages and liability in that each sale by Defendant to Plaintiff's customers showed (a) Defendant's breach of the implied covenant of good faith and fair dealing; (b) Defendant's breach of the goodwill provision of the APA; (c) Defendant's breach of the Covenant Not to Compete; and (d) that KI was competing in the "restricted business."  Finally, Plaintiff contends that bifurcation was unfairly prejudicial because it precluded Plaintiff from presenting its damages figures, while Defendant was permitted to present evidence of its $784,000,000 in direct sales over five years as evidence of no meeting of the minds.

Under Federal Rule of Civil Procedure 42, a trial court may, in its discretion, bifurcate a trial, as follows:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42(b).  "Every civil trial contains questions of liability and damages, and the decision whether to bifurcate the trial must be based on the particular facts of the case." Monaghan v. Travelers Prop. Cas. Co. of Am., No. Civ.A.12-1285, 2014 WL 3534573, at *2 (M.D. Pa. July 10, 2014).  The decision to bifurcate is left in the trial court's discretion.  Id. (citing Idzojtic v. Pa. R.R. Co., 456 F.2d 1228, 1230 (3d Cir. 1972)).  In exercising such discretion, the court "must weigh the various considerations of convenience, prejudice to the parties, expedition and economy of resources."  Emerick v. U.S. Suzuku Motor Corp., 750 F.2d 19, 22 (3d Cir. 1984).  The Third Circuit has noted that "bifurcation is appropriate where litigation of one issue . . . may eliminate the need to litigate a second issue."  In re Bayside Prison Litig., 157 F. App'x 545,

547–48 (3d Cir. 2005) (emphasis omitted).

In the present case, the parties indicated to the Court that the trial on both liability and damages in this matter would last upwards of four weeks. Having already found that the contract at issue was ambiguous and that a genuine issue of fact remained as to both the meaning of the Covenant Not to Compete and whether there was even a meeting of the minds, the Court opted to bifurcate liability and damages. By doing so, the Court substantially reduced the length of the initial trial and allowed the jury to focus on deciding the precise and intended meaning of that contract and if there was a breach. Ultimately, this bifurcation resulted in convenience to the jury and parties, significantly expedited the resolution of the matter, and conserved judicial resources.

Plaintiff's multiple claims of prejudice resulting from bifurcation are unfounded.[9]  First, Plaintiff contends that it hired forensic accountant, Paul Pocalyko, to do a "match" analysis of KI's sales over the five years of the Covenant Not to Compete and ATD's and Adirondack's customers. The "match" analysis alleged showed that KI had sold to 2,904 ATD/Adirondack customers, with sales in excess of $300,000,000, which caused ATD to suffer lost profits in excess of $42,000,000. According to Plaintiff, each "match"—or each sale—was a breach of both the implied covenant of good faith and fair dealing as applied to the goodwill provision of the APA and a breach of the Covenant Not to Compete.

As repeatedly noted above, however, Plaintiff never pled a cause of action for breach of the goodwill provision of the APA or breach of the implied covenant of good faith and fair

---

[9] Defendant argues that Plaintiff does not identify where on the record it objected to bifurcation. Without an objection, Defendant claims that Plaintiff waived this issue. The Court, however, distinctly recalls Plaintiff's strenuous objection in Chambers regarding the decision to bifurcate. While Plaintiff has not identified where on the record it officially made this objection, the Court will accept Plaintiff's off-the-record objections as sufficient to preserve this issue.

dealing related to the goodwill provision.  Accordingly, Plaintiff was not entitled to put on

evidence regarding breach of that provision.  As to the Covenant Not to Compete, Plaintiff had

sufficiently pled an action for breach of that provision, but the jury never reached the issue of

breach.  Rather, it found that the parties did not have a meeting of the minds as to the critical

terms of that Covenant Not to Compete, meaning that no contract was ever formed.  Absent the

existence of a contract, Plaintiff could not prove breach.

 Second, Plaintiff argues that the match of KI sales to ATD customers—evidence that was

to be presented through damages expert Paul Pocalyko—went to the issue of meeting of the

minds.  More precisely, Plaintiff asserts that "the match of KI sales to ATD customers shows that

KI and ATD are in the same business, and therefore KI was competing in the 'restricted business.'

They sold the same product to the same customers.  This was further evidence of meeting of the

minds, as it was obvious that two businesses competing in the same business, and selling to the

same customers, knew what competition was prohibited under the non-compete agreement."

(Pl.'s Mem. Supp. Mot. for New Trial 18.)

 This argument is also incorrect.  The simple fact that both ATD and KI were competing in

the same business and selling to the same customers does not translate into evidence that the

parties had a meeting of the minds as to what form of competition was prohibited under the

Covenant Not to Compete.  While KI understood that it could not sell to certain customers of

Adirondack following the APA, it believed that it was only prohibited from doing so through

catalogs and the Internet.  ATD, on the other hand, believed that KI could not sell to any end-user

customers at all, regardless of the form of sales.  KI never disputed that it sold to Adirondack

customers.  As such, evidence regarding the number of sales KI made to Adirondack customers

did not shed any light on the issue of meeting of the minds.

Finally, Plaintiff alleges an abuse of discretion and unfair prejudice because it was precluded from presenting its damages figures while KI was permitted to present evidence of its $784,000,000 in direct sales over five years. Plaintiff argues that this figure was misleading because not all of those sales were to Adirondack customers.

Again, this argument misunderstands the main issues in this case. As the Court explained to the jury, a party claiming no meeting of the minds cannot rely on merely subjective testimony, but rather must show objective evidence of its intent. In order to do so, KI identified the portion of the APA indicating that the consideration value placed on the Covenant Not to Compete was $10,000. It then introduced evidence showing that during the five-year duration of the Covenant Not to Compete, it made $784,000,000 in sales to end-users. Defendant thereafter argued that it would not have given up over $750 million in sales for a Covenant Not to Compete valued at only $10,000. It reasoned that such evidence reflected that it never intended to agree to a restriction on all sales to end-users, but rather only sales via catalogs and Internet. This information was directly relevant to meeting of the minds as objective evidence of KI's intent, whereas Plaintiff's damages figure did not have any such bearing.

In sum, the Court finds no error in the bifurcation of trial. Litigation of the contract interpretation issue eliminated the need for the jury to consider the damages issue, thereby promoting economy of judicial resources and convenience to the jurors. This consideration became particularly important in light of the lengthy trial proposed by the parties and the fact that a jury would be confined to service for a much longer period of time if bifurcation were not ordered. Finally, notwithstanding Plaintiff's arguments to the contrary, the Court finds that

32

neither party suffered any prejudice as a result of the bifurcation.  Therefore, the Motion for New

Trial based on this alleged error is denied.

### 3.    <u>Paul Pocalyko</u>

Plaintiff next argues that "[f]or the same reasons that the Court committed error in the

form of abuse of discretion not allowing Paul Pocalyko to testify in light of bifurcation, the Court

also abused its discretion by not allowing Mr. Pocalyko to testify, as his testimony was relevant

under F.R.E. 401/402."  (Pl.'s Mem. Supp. Mot. for New Trial 20.)  It goes on to reason that his

testimony "was relevant to the issue of breach of contract regarding goodwill and breach of the

implied covenant of good faith and fair dealing and to the issue of breach of the non-compete."

(<u>Id.</u> at 20.)

This argument first fails for the same reasons set forth above regarding why bifurcation

was proper and not an abuse of discretion.  As Mr. Pocalyko stated in the introduction to his

expert report, he was "retained by counsel for [ATD] to analyze the damages suffered by ATD in

connection with its suit against [KI]. . . . [and] prepared this expert report of [his] opinions to be

expressed at trial, along with the bases for these opinions, concerning the alleged damages

asserted by Plaintiff against Defendant."  (Pl.'s Mot. for New Trial, Ex. S.)  At his deposition, Mr.

Pocalyko confirmed that his opinions were limited to damages issues, not liability issues, as

follows:

> Q.      . . . All right.  Now, let's take a look at Page 2 [of the report], you have not
>            been engaged to provide any opinions on legal liability issues.  We covered
>            that, right?
> A.      That's correct.

(Def.'s Resp. Opp'n Mot. for New Trial, Ex. 2, Dep. of Paul Pocalyko, 132:10–14, Apr. 24,

2013.)  Therefore, any current argument that his testimony was relevant to breach of contract is undermined by his own statements.  Given that the Court bifurcated the damages portion of this case, Mr. Pocalyko's testimony was irrelevant in the liability portion of the case.  Thus, the Court finds no error in the preclusion of his testimony.

### 4.   Denial of Motion in Limine on Value of KI Sales

In another effort to obtain a new trial, Plaintiff avers that the Court committed error in allowing KI's comptroller, Nicholas Guerrieri, to testify—over Plaintiff's objections—to KI's $784,000,000 in sales over five years to support KI's argument of no meeting of the minds. Moreover, Plaintiff asserts that even if such testimony were relevant, expressions of intent must be manifest, *i.e.*, communicated to the other party, and KI never communicated to ATD its intent to continue sales to end-users.

Again, neither argument has merit.  As explained above, KI's $784,000,000 in sales was directly relevant to show that KI would not readily have given up that volume of sales via a Covenant Not to Compete in return only $10,000 in consideration.  In turn, such evidence was an objective manifestation of KI's understanding of the Covenant Not to Compete and, therefore, directly relevant to the issue of meeting of the minds.

As to Plaintiff's contention that Defendant never manifested its intent to continue to sell to end-users, the Court finds the cited evidence inapposite.  Plaintiff recites the deposition testimony of Robert Charles, general counsel for KI who negotiated and drafted language of the APA for KI. That testimony reveals that Mr. Charles never expressly told ATD that KI would continue to make sales of furniture to end-user customers.  (See Pl.'s Mem. Supp. Mot. for New Trial 21–22 (citing Trial Transcript of Robert Charles testimony).)  Closer review of that testimony, however,

indicates that Mr. Charles believed there was no need to do so since KI was only agreeing to get

out of the catalog business, nothing else.  (Id.)  When pressed further on this issue by KI counsel,

Mr. Charles stated as follows:

> Q.   Now, Mr. Billet asked you, why didn't you raise the subject of KI sales to
> end users, during the negotiations.  My first question is, did Mr. MacIntyre
> [counsel for ATD involved with drafting the APA] raise the subject?
>
> A.   Other than the language that he put in the agreement, no, there was no specific
> discussion about do you or do you not sell to end users.  What I told him is,
> here is what we are not going to do.  He, then, turned around and produced a
> draft agreement that satisfied my concern that the non-compete was going to
> be over broad and cover other areas beyond the catalog business.

(Trial Tr. 4/7/14, 101:18–102:2.)  Indeed, far from showing that KI was trying to hide its real

intent, Mr. Charles's testimony indicates his genuinely-held understanding that both KI and ATD

shared the same intent regarding the scope of the Covenant Not to Compete.  See Roberts v.

Consol. Rail Corp., 893 F.2d 21, 25 (2d Cir. 1989) ("To choose between the possible

interpretations, we must look to the intent of the parties, as evidenced by the circumstances

surrounding execution of the contract.")

    In sum, Plaintiff's argument on this point is meritless.  The Court thus denies this portion

of the Motion for New Trial.

### 5.        Corporate Designee Depositions

    Plaintiff also claims that it is entitled to a new trial based on the Court's refusal to allow

the use of corporate designee depositions.  Federal Rule of Civil Procedure 32 provides that

> (3) Deposition of Party, Agent, or Designee. An adverse party may use *for any
> purpose* the deposition of a party or anyone who, when deposed, was the party's
> officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4).

Fed. R. Civ.  P. 32(a)(3) (emphasis added).  Notwithstanding this broad rule, "the Federal Rules

have not changed the long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person . . . Although the increasing availability and fidelity of videotaped depositions has provided a better alternative than reading a written transcription, the preference for live testimony is still endorsed by federal courts."  C. Wright, A. Miller & R. Marcus, 8A Federal Practice and Procedure § 2142 at 158–59 (2d ed.1994) (footnote omitted).  "Rule 32 assumes that under normal circumstances the deposition of a witness will not be used at trial in lieu of that witness's live testimony."  Flores v. NJ Transit Rail Operations, Inc., No. Civ.A.96-3237, 1998 WL 1107871, at *3 (D.N.J. Nov. 2, 1998) (citing Bobrosky v. Vickers, 170 F.R.D. 411, 413 (D.W.Va. 1997) (footnote omitted)).  "[T]he use of the deposition is still subject to generally applicable rules of evidence . . . and the trial court's discretion."  Hillburn v. N.J. Dept. of Corrs., No. Civ.A.07-6064, 2012 WL 3133890, at *22 (D.N.J. July 31, 2012) (citing Colletti v. Cudd Pressure Control, 165 F.3d 767, 773–74 (10th Cir. 1999) (holding that district court did not abuse its discretion and finding that district court's decision to prevent plaintiff from reading in deposition testimony did not affect plaintiff's substantive rights)).  Indeed, Federal Rule of Evidence 611 expressly states that "[t]he court *shall* exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."  Fed. R. Evid. 611 (emphasis added).

　　　　In the present case, KI's corporate designee, Robert Charles, was called by Plaintiff's counsel and subject to lengthy cross-examination.  Despite the fact that Mr. Charles had not

testified inconsistently with his testimony, Plaintiff's counsel attempted to play Mr. Charles's

videotaped deposition while he was on the stand.  The Court called counsel to sidebar to inquire

as to why Plaintiff's counsel was doing so when the witness had not testified in a manner

contradictory to his deposition.  Plaintiff's counsel could offer no reason other than the fact that

he had a right to do so under Federal Rule of Civil Procedure 32.  The Court indicated that this

was a waste of the jury's time and declined to let the deposition be played unless the witness gave

an inconsistent answer on the stand.  (Trial Tr.  4/7/14, 17:25–22:25.)[10]  Thereafter, at the end of

Plaintiff's case-in-chief, Plaintiff's counsel attempted to read a passage from Mr. Charles's

deposition as a KI admission.  Defendant's counsel objected on the grounds that pulling a singular

line out of a six-hour deposition resulted a misleading and out-of-context "admission."  (Trial Tr.

4/9/14, 216:19–20:9.)  The Court agreed that this tactic was misleading and limited Plaintiff's

counsel to reading in standard admissions.  (Id. at 220:6–9.)

Plaintiff's present argument—that the Court's preclusion of corporate designee deposition

was an abuse of discretion under Federal Rule of Evidence 32(a)(3)—does not establish any error

warranting a new trial.  Notably, at no point during any of these instances at trial did Plaintiff

articulate the precise purpose for which it sought to introduce this corporate designee deposition

testimony in lieu of eliciting the live testimony.  Indeed, Plaintiff conceded that Mr. Charles had

not testified contrary to his deposition.  Plaintiff's present Motion fares no better as it merely

argues that because Federal Rule of Civil Procedure 32(a)(3) allows the admission of Rule

---

[10]  According to Plaintiff, there were also other passages from depositions of other KI
corporate designees which should have been presented to the jury, but were precluded by the
Court.  (Pl.'s Mem. Supp. Mot. for New Trial 24.)  Plaintiff, however, does not direct the Court
to the relevant portions of the transcript so that the Court may review the surrounding
circumstances.

30(b)(6) testimony for any purpose, it was abuse of discretion for the Court to preclude it.  It does not acknowledge the Court's authority to rein in counsel and ensure that the jury is not subject to a haphazard and rambling presentation of redundant videotaped clips of a deposition.  Moreover, and more importantly, Plaintiff fails to identify what prejudice that it suffered as a result of the Court's preclusion of such testimony.

In short, the Court properly exercised its discretion to maintain reasonable control over the trial to avoid repetition and waste of time.  Even assuming *arguendo* that the Court's ruling constituted error, it was nothing more than harmless error given Plaintiff's failure to articulate any prejudice that resulted.  See Dean v. Specialized Sec. Response, 876 F. Supp. 2d 549, 553 (W.D. Pa. June 27, 2012) ("[N]o injustice will be found in nonprejudicial trial errors.").  Thus, this portion of Plaintiff's Motion for New Trial is denied.

### 6.    Jury Charge and Verdict Sheet

Plaintiff also seeks a new trial based on allegedly erroneous jury instructions.  In determining whether jury charges are so misleading or inadequate as to be sufficiently prejudicial to warrant a new trial, they are to be viewed as a whole.  Savarese v. Agress, 883 F.2d 1194, 1202 (3d Cir. 1989).  "No error is present where either:  (1) the challenged instructions accurately state the law relating to the particular issue under scrutiny or (2) the instructions to which the moving party objects are practically identical to the proposed jury instructions submitted by the movant." Drames v. Sun River Inv., S.A., 820 F. Supp. 209, 215–16 (E.D. Pa. 1993), aff'd, 17 F.3d 1429 (3d Cir. 1994).  The language in which jury instructions are given is a matter left to the sound discretion of the trial court.  U.S. v. Simon, 995 F.2d 1236, 1243 n.11 (3d Cir. 1993).  Ultimately, the trial court's jury instruction will not comprise reversible error if, "taken as a whole and viewed

in the light of the evidence, [the instruction] fairly and adequately submits the issues in the case to the jury [without confusing or misleading the jurors]."  Id. (quotations omitted).

<strong>a.      Failure to Charge on Goodwill and Breach of the Implied<br>Covenant of Good Faith and Fair Dealing</strong>

Plaintiff's first challenge to the jury instructions asserts that it requested a jury instruction on the implied covenant of good faith and fair dealing with respect to the provisions relating to the sale of customers and goodwill in the APA.  According to Plaintiff, the Court "erred in failing to include a question regarding the implied covenant, completely ignoring that part of the case, and only asking the jury two questions on the verdict sheet, and only regarding the covenant not to compete."  (Pl.'s Mem. Supp. Mot. for New Trial 26–27.)  Moreover, the Court refused to charge the jury on goodwill or the implied covenant of good faith and fair dealing thereby precluding the jury from considering "the goodwill provision of the Asset Purchase Agreement and breach of the implied covenant of good faith and fair dealing." (Id. at 27.)

As set forth in great detail above, under this Court's discussion of Plaintiff's Renewed Motion for Judgment as a Matter of Law, Plaintiff never pled a claim for breach of the covenant of good faith and fair dealing with respect to the goodwill provision of the APA.  Moreover, all references in the Amended Complaint to KI's use of confidential Adirondack customer lists to indirectly compete with ATD and harm ATD/Adirondack's business goodwill were dismissed with prejudice by Stipulation.  (Stipulation & Order dated March 4, 2013, ECF No. 47 (dismissing all claims based on breach of the confidentiality provisions of the APA and all references to breach of confidentiality, including paragraphs 85, 92, and 113).)  Therefore, Plaintiff was not entitled to either a jury interrogatory or jury instruction on a claim not relevant to this case.

**b.**   **Charge on Meeting of the Minds Regarding the Covenant Not to Compete**

The second challenged jury instruction involves the Court's explanation of meeting of the minds.  As noted above, the jury decided the entire case on this point and found that there was no meeting of the minds with respect to the Covenant Not to Compete.  The Court instructed the jury on this point as follows:

> Now, a — to form a contract, and that includes this covenant not to compete, you have to have, first of all, these two parties with legal capacity to contract.  You have to have mutual consent to the terms of the contract, and you have to have consideration.
>
> Now, we have the parties here.  They're — I think all agree that the parties here had a legal capacity to enter into a contract.  No question about that.  And there's no question about consideration here in terms of whether or not there was consideration.  There was consideration for this contract.
>
> The only issue then remaining is was there mutual assent, and mutual assent, as you probably remember from hearing me talk about before, is often referred to as a meeting of the minds of the parties on all essential terms of the contract.
>
> The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.  The manifestation of assent may take the form of written or spoken words or conduct manifesting in agreement.
>
> The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms of the contract.
>
> Now, as I told you before in the case of ambiguous contract, such as this one, the parties may and indeed did present extrinsic evidence as to what was the actual intent in this contract since it couldn't be determined from the four corners of the contract itself.
>
> And the intent of the parties, when you consider — as be determined by you, by considering among other things, the relationship of the parties.  Here they were, two businesses, one big business, one small business, what they said and what they did and all the surrounding circumstances.
>
> A person's exact intent as expressed in words alone doesn't suffice.  In other

40

words, a party to a contract can say, well, I intended that to mean that. I intended that to mean that.

You can hear that testimony, but in order to support it there has to be some other evidence that supports that person's intent, something for which you can infer that, oh, yes, all those facts, consider all the total — totality of the circumstances, that was the intent the agreement.

So you can consider the expressed intent of a person, but it must be buttressed by additional testimony from which — which confirms that that intent was, in your opinion, what they had.

Now, a contract is unenforceable if there is no meeting of the mind between the parties regarding material element of the contract, and when the contracting parties understand the relevant language differently and both understandings you find are reasonable, the contract is unenforceable as there is no meeting of the minds.

Now, keep in mind the plaintiff bears the burden of proving that there was a meeting of the minds, and if you find that it failed to do so, you should find in favor of the defendant.

By the same token, if you find that the plaintiff has proven that there was a meeting of the minds, then you should find in favor of the plaintiff and against the defendant.

Now, this all be made very clear to you in the very short jury interrogatories that you will receive. The first question you're asked to decide is do you find that the parties had a meeting of the minds as to the covenant not to compete contained within the Asset Purchase Agreement.

If you answer that yes, you proceed to question number two. If you answer it no, you return to the courtroom.

(Trial Tr. 4/14/14, 110:3–12:20.)

Plaintiff now argues that the Court failed to charge on objective manifestation of intent. Specifically, it asserts that the Court never explained to the jury that a party's intent as to a contract must be objectively expressed and not be merely subjective, and that the intent must be expressed to the other party during contract formation. Plaintiff also asserts that the jury was

never instructed to consider that ATD reasonably believed that KI's intent was to not sell directly

to end-users and ATD's customers for five years.

Plaintiff's argument fails on multiple grounds.  First, Plaintiff's own  proposed instruction

on meeting of the minds stated:

> When determining the existence of a valid contract, part of the inquiry "centers
> on whether there was a meeting of the minds regarding the material aspects of the
> transaction."  <u>Chuch Ave. Merchants Block Assn., Inc. v. State of New York</u>, 35
> Misc. 3d 1231(A), 1231A (N.Y. Ct. Cl. 2011) (citing <u>Amcan Holdings, Inc. v.</u>
> <u>Canadian Imperial Bank of Commerce</u>, 70 A.D.3d 423 (N.Y. App. Div. 2010)).  In the
> case of sophisticated parties such as KI and ATD, represented by counsel, there is a
> presumption that the executed contracts manifest the true intentions of the parties:

>> . . . there is a presumption that a deliberately prepared and executed
>> written instrument manifests the true intention of the parties; such a
>> presumption should apply with even greater force when the instrument
>> is between sophisticated, counseled businessmen.

> <u>Cellular Tel. Co. v. 210 E. 86th St. Corp.</u>, 44 A.D.3d 77, 83 (N.Y. App. Div. 1st Dept
> 2007) (citing <u>Quantum Chem. Corp. v. Reliance Group</u>, 180 A.D.2 548, 548-549
> (N.Y. App. Div. 1st Dept 1992)).

(Pl.'s Proposed Jury Instructions, ECF No. 101, at 67.)  Despite its insistence that the jury should

have been told that a party's intent must be objectively expressed during the period of contract

formation, Plaintiff's proposed jury charge never requested such an instruction.  Rather, it only

asked that the jury be told of a presumption that the executed contract manifests the true intention

of the parties.  Accordingly, Plaintiff has waived its current argument.

Second, the Court's instruction was consistent with New York law.  New York's Pattern

Civil Jury Instructions describe "mutual assent," or meeting of the minds, as follows:

> Mutual assent is often referred to as "a meeting of the minds" of the parties on all
> essential terms of the contract . . .  The manifestation of mutual assent must be
> sufficiently definite to assure that the parties are truly in agreement with respect to all
> material terms . . .

The manifestation of assent may take the form of written or spoken words (express contract) or conduct manifesting an agreement (contract implied-in-fact) . . . . As a matter of law, there is no contract when it is clear that the words relied upon as an offer were written in jest . . . . Further, a forged signature renders a contract void ab initio, because there can be no meeting of the minds when a forgery has been perpetrated . . . .

Ordinarily, whether writings exchanged by the parties constitute a contract is a question of law for the court . . . . However, when a finding of whether a contract actually exists is dependent on facts from which differing inferences may be drawn, a question of fact arises . . . . Where there is a question of fact as to whether one of the parties intended to be bound by the alleged contract, the pattern charge should be augmented by the following supplemental instruction:

> AB claims that CD [state words or conduct on which plaintiff relies] and that those (words, conduct) show that CD intended to be obligated by (his, her, its) (words, conduct). CD claims that (he, she, it) did not [state as appropriate: say those words, engage in that conduct, intend to be obligated by (his, her, its) (words, conduct)].

> The intent of the parties is determined by considering their relationship, what they said and what they did and all of the surrounding circumstances. A person's secret intent has no bearing; only the intent indicated by (his, her) (words, conduct) may be considered.

> If you decide that CD did not [state words or conduct on which plaintiff relies] or that CD's (statements, actions) do not show an intention to be obligated by (his, her, its) (words, conduct), you will find for CD [state as appropriate: on this issue] and report your verdict to the court. If you decide that CD did [state words or conduct on which plaintiff relies] and that CD's (statements, actions) show an intention to be obligated by (his, her, its) (words, conduct), you will find for AB [state as appropriate: on this issue] and you will go on to consider [set forth next issue to be considered].

N.Y. Pattern Jury Instructions 4:1 (citation omitted); see also Brown Bros. Elec. Contractors, Inc.

v. Beam Const. Corp., 41 N.Y.2d 397, 399–400 (N.Y. 1977) ("In determining whether the parties

entered into a contractual agreement and what were its terms, it is necessary to look, rather, to the

objective manifestations of the intent of the parties as gathered by their expressed words and

deeds . . . In doing so, disproportionate emphasis is not to be put on any single act, phrase or other expression, but, instead, on the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain.") (citation omitted).

Although this Court did not use the exact language of the pattern instruction, the Court's actual instruction presented these precise concepts.  Specifically, the Court stated, in pertinent part:

> Now, as I told you before in the case of ambiguous contract, such as this one, the parties may and indeed did present extrinsic evidence as to what was the actual intent in this contract since it couldn't be determined from the four corners of the contract itself.
>
> *And the intent of the parties, when you consider — as be determined by you, by considering among other things, the relationship of the parties.*  Here they were, two businesses, one big business, one small business, what they said and what they did and all the surrounding circumstances.
>
> *A person's exact intent as expressed in words alone doesn't suffice.*  In other words, a party to a contract can say, well, I intended that to mean that.  I intended that to mean that.
>
> *You can hear that testimony, but in order to support it there has to be some other evidence that supports that person's intent, something for which you can infer that, oh, yes, all those facts, consider all the total — totality of the circumstances, that was the intent the agreement.*
>
> So you can consider the expressed intent of a person, *but it must be buttressed by additional testimony* from which — which confirms that that intent was, in your opinion, what they had.

(Trial Tr. 4/14/14, 111:2–24 (emphasis added).)  In other words, this Court adequately conveyed to the jury that a party's claimed intent in entering a contract must be manifested not merely through subjective testimony, but through objective circumstances.

Third, to the extent Plaintiff argues that the term "objective manifestation of intent" means

that the intent must be manifested to the other party, Plaintiff misunderstands the law.  The term

"objective manifestation" does not mean that a party has to somehow tell the other party of what

its contractual intent is.  Rather, it simply means that a party's subjective intent must be

manifested or indicated "by words and acts," not simply by a post-hoc explanation for what the

party's intent was.  Exec. Towers at Lido, LLC. v. Metro Const. Servs., Inc., 806 N.Y.S.2d 444

(N.Y. Sup. Ct. 2005).  "[O]nly if the parties attributed materially different meanings to terms,

neither one knew or had reason to know the meaning contemplated by the other, and the term is

essential for purposes of contract formation, then the contract is void."  Canada Life Assurance

Co. v. Guardian Life Ins. Co. of Am., 242 F. Supp. 2d 344, 356 (S.D.N.Y. 2003).

        In this case, the Court properly instructed the jury that each party had to offer some

evidence of its proclaimed intent.  Defendant presented ample objective evidence that it

understood the Covenant Not to Compete as precluding its sales of products only through catalogs

and the Internet.  It offered, among other things, evidence of how Adirondack conducted business,

the amount of sales KI made to end-users, and the consideration it was offered for the Covenant.

KI was not obligated to tell ATD that it did not intend to stop selling to end-users during the five-

year period of the covenant.  Indeed, as noted above, KI admitted it did not mention its sales to

end-users because it did not believe that point was at issue in negotiations of the Covenant Not to

Compete.  In response, ATD did not meet its burden of proving that KI "knew or had reason to

know" the contrary meaning contemplated by ATD.  Canada Life, 242 F. Supp. 2d at 356.

        Finally, Plaintiff incorrectly asserts that the jury should have been instructed to consider

that ATD reasonably believed that KI's intent was to not sell directly to end-users and ATD's

customers for five years.  A primary source of the Covenant Not to Compete's ambiguity arose

from the fact that it never mentioned sales to "end-users." Thus, to the extent that ATD believed that the Covenant prohibited KI's sales to end-users, Plaintiff bore the burden of proving both its belief and that KI knew or should have known of that reasonable belief. Had the Court affirmatively instructed the jury regarding what ATD's reasonable belief was with respect to the scope of the Covenant, it would have effectively usurped the jury's role as factfinder.

Ultimately, the Court finds no error with respect to its jury instruction on "meeting of the minds" or "mutual assent." Plaintiff's Motion is therefore denied as to this point.

### c.     Charge on Consideration

Finally, with respect to jury instructions, Plaintiff asserts that the Court improperly failed to give Plaintiff's requested instructions that (a) the smallest consideration is sufficient for the most onerous of obligations under New York law and (b) the amount of consideration is not a factor for determining the meeting of the minds. Thus, according to Plaintiff, the jury was not instructed that the $10,000 allocation for the Covenant Not to Compete in the APA was adequate consideration under any circumstances for the Covenant.

Plaintiff is again mistaken. The Court specifically directed the jury that "there's no question about consideration here in terms of whether or not there was consideration. There was consideration for this contract." (Trial Tr. 4/14/14, 110:11–13.) Given the Court's direction that consideration had been conclusively established and agreed to, there was no reason for the jury to be told that even the smallest consideration could constitute adequate consideration for a large undertaking or that the amount of consideration did not affect whether there was a meeting of the minds. Indeed, Defendant did not dispute that had the parties had a meeting of the minds on the Covenant Not to Compete, the $10,000 would have satisfied the consideration element. Rather,

Defendant used the $10,000 figure only as an objective manifestation of its understanding of the contract.  See Consol. Edison, Inc. v. Ne. Utils., 332 F. Supp. 2d 639 (S.D.N.Y. 2004) ("This understanding of the release and the parties' intent is further supported by looking at the consideration involved in the Settlement Agreement.").  Such evidence was proper for purposes of whether there was a meeting of the minds and the Court would have erred in instructing the jury to disregard it.

### 7.     Refusal to Allow Redirect Examination

Plaintiff's final set of alleged trial errors center on the Court's refusal to allow redirect examination witnesses: Bryan MacIntyre and Eric Wischnia.

#### a.     Bryan MacIntyre

Bryan MacIntyre was one of ATD's attorneys who negotiated and drafted the language of the APA and the corresponding Supply Agreement.  During cross-examination, KI counsel purportedly raised several "misleading points."  Yet, according to Plaintiff, the Court precluded redirect examination on certain key issues raised on redirect, resulting in the jury being misled by incomplete and unexplained answers.  Plaintiff now contends that this was abuse of discretion.

Upon review of the trial transcript, the Court finds a very different version of the events than the version presented by Plaintiff.  At the conclusion of KI's cross-examination of Mr. MacIntyre, ATD counsel began redirect examination over multiple objections by defense counsel. (Trial Tr. 4/2/14, 203:13–207:15.)  As ATD's counsel began to rehash issues that had already been raised and thoroughly covered on direct and then responded to on cross, the Court halted redirect examination.  In doing so, the Court noted that Plaintiff was merely repeating questioning that it had already done on direct examination, that both sides had had ample opportunity to

question this witness, and that both sides would have the opportunity to argue to the jury how Mr.

MacIntyre's testimony should be interpreted.

The alleged "misleading points"[11] raised by Defendant's counsel during cross-examination

were nothing more than responses to issues raised by Plaintiff's counsel on direct examination.

For each point, Plaintiff fails to explain what redirect examination would have offered to correct

any misstatements, as follows:

    1.    Plaintiff asserts that "KI's questioning [of] Mr. MacIntyre inferred that 'indirect competition' only meant setting up another company, when the terms [sic] is undefined, is broader than that, and even Mr. Charles agreed that, under the non-compete, setting up another company was not the only scenario of 'indirect competition.'" (Pl.'s Mem. Supp. New Trial 33.)  On direct, however, Plaintiff had elicited testimony from McIntyre that "directly or indirectly" meant "you can't do it directly and you can't do something indirectly that would circumvent the provisions below . . . [such as] taking a path that may not be obvious or necessarily direct, but if it's indirect and it gets to the same ends, then it would be prohibited." (Trial Tr. 4/2/14, 151:10–16.)  He also testified that it broadened the non-compete.  (Id. at 151:17–19.)  In response, on cross-examination, Defendant got Mr. MacIntyre to concede that the term "indirectly" was not defined in the APA. (Id. at 177:8–179:15.) He also had Mr. MacIntyre concede that if Mr. Charles testified that the two men specifically discussed that the word "indirectly" meant that KI could not go out and own another catalog company that competes with Adirondack, Mr. MacIntyre could not dispute that characterization because he could not remember their conversations. (Id. at 183:4–12.)  To the extent Plaintiff now contends that Defendant's counsel mischaracterized Mr. Charles's testimony, that was not a matter that could be readdressed on cross-examination of Mr. MacIntyre, particularly when Mr. MacIntyre had no recollections of his conversations with Mr. Charles.

    2.    Plaintiff asserts that Defendant's counsel got Mr. MacIntyre to concede that the term "end-user customers" is not mentioned in the definition of "the Business" in the APA.  (Pl.'s Mem. Supp. Mot. for New Trial 33.)  Plaintiff claims that this was misleading because the term "end-user" is essential to the contract, "but not mentioned, nor did it have to be." (Id.)  Plaintiff's argument, however, fails to explain what testimony would have been elicited on redirect to make this point.  On direct, Mr. MacIntyre testified that Adirondack's "business as conducted" was the sale of

---

    [11]  The Court notes that Plaintiff did not provide any citations to the trial transcript for this allegedly misleading cross-examination.

furniture to end users and that, under the Covenant Not to Compete, KI was prohibited from selling furniture direct to end users. (Trial Tr. 4/2/14, 152:10–12, 155:22–25.) On cross-examination, Mr. MacIntyre conceded that the words "end user" are non-existent in the definition of "Restricted Business" and that those terms could have been included for clarity purposes.   (Id. at 164:17–166:11.)   Any different interpretation of the Covenant was a matter for attorney argument as opposed to redirect examination.

3.     Plaintiff contends that "KI's questioning of Mr. MacIntyre implied that, because KI controlled the Seller Parties, that it was the seller, so as to argue that it was the "Seller" for purpose § C of the Asset Purchase Agreement and the $10,000 allocation, which clearly did not apply to KI and only applied to ADCO, which was the seller of the assets." (Pl.'s Mem. Supp. Mot. for New Trial 33.)  Aside from the fact that Plaintiff's argument is confusing and does not pinpoint what portion of the cross-examination is at issue, Plaintiff did not identify what testimony it could have elicited from Mr. MacIntyre on redirect examination to correct any purported misunderstanding.

4.     Plaintiff argues that "KI's questioning inferred that ADCO only made 'catalog sales,' namely something like 'mail order,' when ADCO did virtually no mail order anymore, and sales of products were made by sales people." (Id. at 33.)  Again, Plaintiff fails to point to precisely where in the transcript this misleading questioning occurred or what testimony could have been elicited from Mr. MacIntyre on redirect that would have been relevant.  Indeed, Plaintiff does not explain how it could have questioned Mr. MacIntyre, who served only as outside counsel for ATD, about the true nature of ATD's business.

Although the Federal Rules of Evidence do not directly address a party's right to redirect examination, Rule 611(b) provides that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.  The court *may, in the exercise of discretion*, permit inquiry into additional matters as if on direct examination."  Fed. R. Evid. 611(b) (emphasis added).  "[T]he scope of redirect examination is within the sound discretion of the trial court."  U.S. v. Boatwright, 425 F. Supp. 747, 749 (E.D. Pa. 1977) (citing U.S. v. Hodges, 480 F.2d 229, 233 (10th Cir. 1972) and Chapman v. U.S., 346 F.2d 383 (9th Cir. 1965)).  In this case, the mere fact that Plaintiff did not like or agree with the

inferences Defendant made on cross-examination does not mean that such inferences were either

misleading or the proper scope of redirect examination.  Mr. MacIntyre testified within the bounds

of his knowledge.  All of the issues Plaintiff now raises are issues of inconsistency with other

evidence in the record and not issues that could have been dealt with on redirect examination.

Absent any showing of prejudice, Plaintiff's Motion on this issue is denied.

### b.    Eric Wischnia

Lastly, Plaintiff argues that the Court improperly restricted redirect examination of Eric

Wischnia, the ATD Executive Vice President.  Specifically, Plaintiff argues:

> The issue was whether ATD knew that KI sold directly to end-user customers prior
> to entering into the Asset Purchase Agreement.  Even the Court questioned Mr.
> Wischnia about this. . . . However, the implication of the questioning was that ATD
> had to do due diligence on KI, when the assets being purchased were from the
> Adirondack Chair Co., Inc., so diligence in advance of the Asset Purchase Agreement
> was regarding [Adirondack], its finances, and its business, not how KI conducted its
> business.  There was no duty to do due diligence regarding KI; ATD did not buy
> anything from KI.  It was misleading for the jury to be left thinking that ATD did not
> do something—namely, due diligence regarding KI—when it was not part of the
> transaction.  All KI had to do was comply with the non-compete.  The undersigned
> counsel for ATD tried to question Mr. Wischnia on this . . ., but the Court terminated
> the questioning.

(Pl.'s Mem. Supp. Mot. for New Trial 35.)

Again, the Court finds this argument meritless.  Mr. Wischnia was subject to lengthy

direct, cross, redirect, and re-cross examination, during which time parties had more than ample

opportunity to explore the bounds of Mr. Wischnia's knowledge regarding the transaction at issue.

During cross-examination, Defendant's counsel asked him if ATD ever inquired about whether KI

sold to end users or whether ATD did due diligence on KI, and he responded that ATD had not.

(Trial Tr. 4/9/14, 207:25–208:6.)  On redirect examination, Plaintiff's counsel then specifically

asked whether there was any reason in the transaction at issue for ATD to ask KI if it planned to sell directly to end users in spite of the non-compete, to which Mr. Wischnia responded "no." (Id. at 212:3–21.)  Subsequently, on re-cross examination, Defendant's counsel engaged in focused and limited questioning to confirm that, despite doing business with KI for over fifty years, ATD did not know that KI had been selling directly to end users since the 1980's and could not determine that fact by looking at KI's website. (Id. at 213:14–24, 214:22–25.)  Defendant did not ask any questions suggesting that ATD was required to do due diligence on KI.  At the close of re-cross examination, the Court clarified with Mr. Wischnia that he did not know that KI sold to end-users prior to entering the agreement and only entered the Covenant Not to Compete at ATD's lawyers' insistence and as a prophylactic measure. (Id. at 215:15–216:5.)  Notwithstanding the exhaustive questioning on this point, Plaintiff's counsel then attempted to engage in re-redirect examination to again cover the issue of whether ATD had to do due diligence on KI.  At that point, the Court exercised its discretion and stopped the questioning. (Id. at 216:8–14.)

At this juncture, Plaintiff's sole argument is that "the jury [was] left thinking that ATD did not do something—namely, due diligence regarding KI—when it was not part of the transaction." (Pl.'s Mem. Supp. Mot. for New Trial 35.)  In other words, Plaintiff's complaint appears to be that despite being able to question Mr. Wischnia twice, Plaintiff did not get the last word on the subject and the jury may have been left with an inference unfavorable to its case.  This contention establishes neither trial error nor a valid basis for granting a new trial.

### 8.   Conclusion as to Rule 59(a) Motion

Having thoroughly reviewed all of Plaintiff's claimed trial errors, the Court finds no grounds for granting a new trial.  Plaintiff has identified no clear trial error that resulted in either

51

injustice or a verdict that was contrary to the weight of the evidence.  Moreover, Plaintiff has not demonstrated that any of the claimed errors resulted in unfair prejudice to their case.  Ultimately, the parties were given significant leeway over a two-week trial period to put forth all of their evidence and witnesses supporting their interpretations of the APA and Covenant Not to Compete.  The jury returned a verdict that there was no meeting of the minds.  The mere fact that Plaintiff did not obtain the verdict it desired simply does not permit it to obtain a second bite at the apple.  The Court therefore denies this Motion in its entirety.